**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FREDERICK OPIYO,

*Plaintiff*,

*v*.

H. BOEHM, Deputy Sheriff;
J. DARLING, Deputy Sheriff;
WEDGE, Deputy Sheriff,

*Defendants*.
_____________________________/

CASE NO. 09-CV-13609

DISTRICT JUDGE GEORGE CARAM STEEH
MAGISTRATE JUDGE CHARLES BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
(Doc. 22)

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion be **GRANTED.**

## II. REPORT

### A. Introduction

This prisoner civil rights case brought under 42 U.S.C. § 1983[1] was originally filed *pro se*; Plaintiff's counsel filed an appearance on January 4, 2010. (Doc. 9.) The case was referred on September 16, 2009, by United States District Judge George Caram Steeh to the undersigned magistrate judge for pretrial case management pursuant to 28 U.S.C. § 636(b). (Doc. 3.) The events giving rise to the instant complaint occurred while Plaintiff was incarcerated at the Sanilac

[1]Although Plaintiff is a federal prisoner, he is lodged in a state facility and his complaint alleges actions taken by state actors; thus, the case is not a *Bivens* action.

County Jail in Sanilac, Michigan. Plaintiff was released from custody of the Federal Bureau of Prisons on November 20, 2009.

A previous Report and Recommendation ("R&R") recommending that the complaint be *sua sponte* dismissed as to all other defendants was adopted on January 20, 2010, after Plaintiff had successfully moved for an extension of time in which to file objections. (Docs. 5, 7, 10, 11.) Therefore, service of the complaint on the remaining three defendants was ordered on February 1, 2010. (Doc. 12.) Defendants answered the complaint on March 29, 2010, asserting, among other defenses, failure to exhaust administrative remedies and qualified immunity. (Doc. 17.)

Defendants filed the instant motion for summary judgment on April 27, 2010 (Doc. 22), Plaintiff responded on May 25, 2010 (Doc. 23), and Defendants filed a reply on June 3, 2010. (Doc. 24.) Upon review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

**B. Background**

Plaintiff alleges that on September 8, 2008, while he was lodged at the Sanilac County Jail, he was sexually assaulted by his cellmate, an inmate by the name of Broom. (Compl., Doc. 1 at 23.)

Prior to the alleged assault, Plaintiff avers that his request to transfer to another cell was denied. Specifically, Plaintiff claims that on September 3, 2008, Deputy Wedge denied Plaintiff's request to transfer him to a single cell so that he could "take care of his medical condition"[2] because other inmates, i.e., Fleming and Tyler, were "giving him a hard time and making snide remarks as to his medical condition" and he "felt threatened." (Doc. 1 at 24.) However, Plaintiff's

[2]Plaintiff states that he suffers from Herpes Simplex. (Compl. at 138.)

affidavit in support of his response (and attached to his complaint) indicates that although he was not immediately transferred from his cell at the time of his request, which occurred at 6:00 p.m., he was transferred to another cell four hours later that night, at 10:00 p.m. (Doc. 1, Ex. 1 at 38; Doc. 23, Ex. E at 3.) Plaintiff also contends that Deputy Darling "reported to the inmates that [Plaintiff] Opiyo had complained to him and he was labeled as a snitch." (Doc. 1 at 47.)

Plaintiff further attests that on September 5, 2008, Deputy Boehm delivered a brown paper bag to inmate Broom. (Doc. 23, Ex. E at 3.) However, Defendants proffer the affidavit of Jail Lieutenanat Nicholas Romzek, who states that "the Sanilac County's payroll records indicate that Deputy Boehm was not working on September 5, 2008." (Doc. 22, Ex. B, ¶ 7.)

Plaintiff asserts that on September 6, 2008, "Deputy Palmer was dispatched to cell #5 concerning an argument between several inmates" and therefore Defendants knew that "there was a problem between the inmates." (Doc. 1 at 26.)

Plaintiff states that on September 8, 2008, he "woke up and found himself in pain in his genital and buttocks areas [so h]e knew that something had happened to him the previous night." (Doc. 1 at 24.) Plaintiff contends that at around 6:00 a.m. that morning, Deputy Boehm inquired how things were going and that Plaintiff's cellmate, inmate Broom, responded that they should let Plaintiff sleep for three hours. (Doc. 1 at 24.) Plaintiff alleges that at around 11:00 a.m., he overheard inmate Broom and others talking about how Broom had "drugged the Plaintiff with medication that he received from Deputy Boehm . . . [and] had the body of Plaintiff moved to another room where he performed a sexual act on the Plaintiff." (Doc. 1 at 24.) Plaintiff adds that inmate Broom bragged to others about sexually assaulting Plaintiff and that "this was done at the behest of the Deputies and that he could not get in trouble for it." (Doc. 1 at 24.)

Plaintiff also alleges that he was sexually assaulted by inmate Broom on September 11, 2008, and that inmate Broom bragged about the assault and told "Inmates Henery and Mosley [] that he could not continue to go through with it." (Doc. 1 at 25.) Plaintiff states that he was finally moved into another cell on September 15, 2008, "after the inmates complained that Plaintiff was smelling badly." (Doc. 1 at 25.)

**C. Arguments of the Parties**

Defendants argue that they are entitled to summary judgment because Plaintiff has failed to exhaust his administrative remedies, because his complaint fails to state a claim against Defendants Wedge and Darling, and because all of three Defendants are entitled to qualified immunity. (Doc. 22.)

Plaintiff responds that since the complaint consists of 137 pages that Plaintiff filed *pro se*, and since Plaintiff has not received a response to his request for production of documents dated August 25, 2009, he has been deprived of the opportunity to engage in meaningful discovery such that the Court should "grant an extension of time to respond [to the instant motion for summary judgment] until discovery has been completed." (Doc. 23 at 7-8.) Plaintiff also addresses the substance of the motion and asserts that a genuine issue of material fact is established by Plaintiff's affidavit in support of the response. (Doc. 23 at 9-12, Ex. E.) As to qualified immunity, Plaintiff contends that this case presents an exception to that immunity, i.e., gross negligence. (Doc. 23 at 11-12.)[3]

[3]This argument appears to be a misplaced state law argument.

### D. Motion Standards

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is

"utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**E. Analysis and Conclusions**

**1. Exhaustion of Administrative Remedies**

Prisoner civil rights cases are subject to the Prison Litigation Reform Act's ("PLRA") mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Suits "brought with respect to prison conditions" include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). To exhaust a claim, a prisoner must proceed through all of the steps of a jail or prison's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), that failure to

"properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386.

The Supreme Court provided further clarification of the PLRA's exhaustion rule in *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). The *Jones* Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in their complaint, holding instead that failure to exhaust is an affirmative defense that must be raised by the defendant. *Id.* at 921. The Court further held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 127 S. Ct. at 922-23.

In this case, Plaintiff was housed at the Sanilac County Jail at the time the relevant events occurred. Sanilac County Jail's "Inmate Guide" provides procedures for inmate grievances and emergency inmate grievances. (Doc. 22 at Ex. C.) The policy requires a grievance to be in written form, to be filed within seven (7) days of the incident complained of, and that the statements be "factual." (*Id.* at 3.) The policy provides that a shift supervisor or jail command officer will address the grievance and that, if unsatisfied, the inmate can appeal the answer to the grievance by submitting another grievance form. (*Id.*) Appeals are heard by the jail administrator and those decisions are final. (*Id.*)

Defendants assert that Plaintiff never filed any grievances while at Sanilac County Jail and proffer the affidavit of Jail Lieutenant Nicholas Romzek in support of that assertion. (Doc. 22 at

Ex. B.) Plaintiff's response does not address the exhaustion issue. (Doc. 23.) I note that Plaintiff's affidavit entitled "Series of Chronological Events" contains detailed descriptions of the events but does not mention filing a grievance while at the Sanilac County Jail. (Doc. 23 at Ex. E.) I further note that Plaintiff's Complaint "remind[s] this Court that the 'Exhaustion of administrative remedies is not required where it would be futile . . . . There is no administrative remedy that could correct a sexual assault and therefor the attempt would be futile at best . . . ." (Doc. 1 at 57.)

I suggest that Defendants have properly supported their motion with evidence demonstrating that Plaintiff failed to exhaust his administrative remedies. I further suggest that neither Plaintiff nor his counsel have even alleged that Plaintiff took any step toward exhausting his administrative remedies and that Plaintiff has at least impliedly conceded he has failed to exhaust administrative remedies. I therefore suggest that Defendants' summary judgment motion should be granted on this ground alone.

**2. Rule 56(f)**

Plaintiff contends that since the complaint consists of 137 pages that Plaintiff filed *pro se*, and since Plaintiff has not received a response to his request for production of documents dated August 25, 2009, he has been deprived of the opportunity to engage in meaningful discovery such that the Court should "grant an extension of time to respond [to the instant motion for summary judgment] until discovery has been completed." (Doc. 23 at 7-8.) Plaintiff does not address the Court's own Notice to Submit Initial Dispositive Motions which requested initial dispositive motions because the defense of qualified immunity was asserted in the responsive pleading, along

with the defenses of statute of limitations, failure to state a claim upon which relief can be granted, *res judicata* and failure to exhaust administrative remedies. (Doc. 18.)

Rule 56(f) of the Federal Rules of Civil Procedure provides:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

The party opposing the motion bears the burden to show that discovery is necessary. *CGH Transport, Inc. v. Quebecor World, Inc.*, 261 Fed. App'x 817, 821 (6th Cir. 2008). The Rule 56(f) affidavit must "identify the material facts it hopes to uncover pursuant to Rule 56(f)." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed. App'x 826, 835 (6th Cir. 2009).

Although Plaintiff has filed an affidavit that sets forth a chronology of events, Plaintiff has not filed any Rule 56(f) affidavit to date. "In [the affidavit's] absence, there is no justification for the [] blanket statement that a motion for summary judgment will be premature until the close of discovery." *Wallin v. Norman*, 317 F.3d 558, 563 (6th Cir. 2003). *See also Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) ("Where a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by Rule 56(f) by filing an affidavit, there is no abuse of discretion in granting summary judgment"). I therefore suggest that to the extent Plaintiff's response can serve as a motion under Rule 56(f), it should be denied for failure to file a Rule 56(f) affidavit.

Even if this defect were overlooked, I suggest that Plaintiff's response, even if it were in the form of an affidavit, does not set forth any specific facts that Plaintiff hopes to uncover and thus fails to meet his burden under Rule 56(f). *See Taylor Acquisitions, supra. See also Oatman v. Potter*, 92 Fed. App'x 133, 138 (6th Cir. 2004) (affirming summary judgment in favor of

defendant where "Plaintiff neither filed a Rule 56(f) motion detailing the discovery needed, nor a separate motion for additional discovery prior to any resolution of the summary judgment motion.")

I further note that when a defendant asserts the defense of qualified immunity, as Defendants have done here, courts are to determine the immunity issue at an early stage of the litigation and should not delay ruling on a motion for summary judgment merely because discovery is not complete. *See Skousen v. Brighton High School*, 305 F.3d 520, 526-27 (6th Cir. 2002). Therefore, I suggest that Rule 56(f) does not require the Court to delay resolution of the instant summary judgment motion.

**3. Alternative Analysis**

**a. Qualified Immunity and 42 U.S.C. § 1983 Standards**

Defendants contend that they are entitled to qualified immunity. (Doc. 22 at 19-21.) The Supreme Court has explained that, pursuant to the defense of qualified immunity,"government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene*

*v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

When a defendant moves for summary judgment on the basis of qualified immunity, the analysis involves three inquiries: (1) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (2) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (3) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).

In deciding qualified immunity questions, courts were for some years required to address these inquiries in sequential order. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005); *Klein v. Long*, 275 F.3d 544 (6th Cir. 2001) (both citing *Saucier*, 533 U.S. at 201). However, the sequential approach is no longer mandated; judges are now permitted to use their

sound discretion in deciding which of the prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, ___U.S.___, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

The Supreme Court has also clarified the interplay between qualified immunity and the summary judgment standards found in Rule 56(c):

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of the events is so utterly discredited by the record that no reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

Once the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). The court must only consider the facts known to the officers at the time the conduct was undertaken. *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005).

The elements of a claim under 42 U.S.C. § 1983 are: (1) the violation of a right secured by the federal Constitution or federal law that was (2) committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

It is well-established that to state a federal civil rights claim, a plaintiff must allege the personal involvement of each defendant. *See, e.g., Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691-92, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (liability under § 1983 cannot be based upon a theory of *respondeat superior*); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (supervisory defendant must have been personally involved, encouraged or condoned the alleged misconduct); *Kesterson v. Moritsugu*, No. 96-5898, 1998 WL 321008, at **4 (6th Cir. 1998) (a plaintiff must "allege that a specific defendant performed a specific act that suffices to state a claim").

**b. Eighth Amendment Governing Law**

The Eighth Amendment provides that "cruel and unusual punishments [shall not be] inflicted." U.S. Const. amend VIII. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Liability exists "only if [the defendant] knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847.

In the context of assaults by one inmate on another, "if [the defendants] behaved with deliberate indifference to the plaintiff's safety, meaning that they knew of a serious danger to him (really knew – not just should have known, which would be all that would be required in a negligence case) and could easily have prevented it from materializing but failed to do so, they are liable." *Case v. Ahtow*, 301 F.3d 605, 605-06 (7th Cir. 2002). Where "defendants [] had no knowledge of possible sexual assaults until *after* plaintiff and the other prisoner were separated, they did not violate plaintiff's constitutional rights." *Krispin III v. Core*, No. 09-cv-292-bbc, 2010

WL 547534, at *2 (W.D. Wis. Feb. 11, 2010). In addition, any threat must be a "particularized threat to plaintiff's safety" beyond simply knowledge that a prisoner is a problematic inmate. *Stuckey v. Thompson*, No. CV 405-216, 2001 WL 1035134, at *6 (S.D. Ga. Mar. 29, 2007). "[T]he Eighth Amendment is not triggered by a vague complaint that a prisoner is having 'problems' with other prisoners, or even that other prisoners are 'pressuring' him, because these types of complaints may suggest irritation more than danger . . . [; thus, the constitution is triggered] only when the prisoner communicates that he is in serious danger." *Id.* at *3.

**i. Allegations Regarding September 3, 2008**

Plaintiff contends that Deputy Wedge denied his request to transfer him to a single cell so that he could "take care of his medical condition" because other inmates, i.e., Fleming and Tyler, were "giving him a hard time and making snide remarks as to his medical condition" and he "felt threatened." (Doc. 1 at 24.) Although he was not immediately transferred from his cell at 6:00 p.m. when he requested the transfer, he was transferred to cell #5 four hours later, i.e., at 10:00 p.m., that same night. (Doc. 1, Ex. 1 at 38; Doc. 23, Ex. E at 3.) Plaintiff also contends that Deputy Darling "reported to the inmates that [Plaintiff] had complained to him and he was labeled as a snitch." (Doc. 1 at 47.)

Even assuming, *arguendo*, that Plaintiff should have been transferred for his safety, I suggest that a delay of four hours in fulfilling his request for a transfer does not even approach constitutional significance. *See Williams v. Cass County Sheriff Dep't*, No. 1:09-cv-590, 2009 WL 2370713, at *5 (W.D. Mich. July 30, 2009) (seventeen-day delay in moving plaintiff out of ant-infested cell did not show that defendants disregarded an excessive risk to his health or safety); *Groomes v. Parker*, No.08-2028-An/P, 2008 WL 4057763, at *8 (W.D. Tenn. Aug. 26, 2008)

(failure to move plaintiff to a cell with electrical power for ten days did not violate the Eighth Amendment).

Although labeling an inmate a snitch may violate a correction officer's duty to protect inmates, I suggest that the instant facts are distinguishable from a case cited in the first R&R which held that a violation occurred.[4] In *Benefield v. McDowall*, 241 F.3d 1267 (10th Cir. 2001), Plaintiff asserted that the guard "put him in danger of attack or even death at the hands of other inmates by circulating rumors that he was a snitch and by showing other inmates a letter he allegedly wrote, indicating that he was giving information to the prison investigations staff." *Id*. at 1270. In the instant case, Plaintiff's sole allegation is that Deputy Darling "reported to the inmates that Opiyo had complained to him and he was labeled a snitch." (Doc. 1 at 47.) Based on the context of the allegation in the complaint, the "report" addressed Plaintiff's complaints that his then-cellmates, Fleming and Tyler, were "giving him a hard time and making snide remarks as to his medical condition" such that Plaintiff requested to be transferred to another cell. (Doc. 1 at 24.) Plaintiff was transferred to another cell four hours after he requested to be transferred. (Doc. 1, Ex. 1 at 38; Doc. 23, Ex. E at 3.) Since Plaintiff was indeed transferred away from his cellmates, it would be patently obvious to the cellmates that he requested the transfer and it was granted. Therefore, any "report" made by Deputy Darling that Plaintiff wanted to be transferred would not have added any information to the inmates' pool of knowledge and could not have had any detrimental effect. In addition, there is no evidence that Deputy Darling, Wedge or any defendant did anything to imply that Plaintiff was giving information to the prison investigations

---

[4]Although the first R&R also cited *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138-39 (9th Cir. 1989), and *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984), I note that these cases predated the effective date of the PLRA and thus, they are not as persuasive.

staff. The only information even alleged to have been conveyed by Deputy Darling was that Plaintiff "complained." (Doc. 1 at 47.) Complaints are universal in prison and being known for complaining is not synonymous with being a "snitch."

Furthermore, Plaintiff has not even alleged any specific fear of retaliation, substantial threat of danger, nor has he alleged that since being "labeled," he is "forced to fight off other inmates who are trying to inflict physical damage on him." *Catanzaro v. Michigan Dep't of Corr.*, No. 08-11173, 2009 WL 4250027, at *12 (E.D. Mich. Nov. 19, 2009) (holding that an allegation that the prisoner was forced to fight off other inmates could state a claim even without physical injury). Finally, Plaintiff's claim is "unsupported by any allegation of resultant harm" and thus should be dismissed. *See Thompson v. Michigan Dep't of Corr.*, 25 Fed. App'x 357, 359 (6th Cir. 2002). I therefore suggest that Plaintiff has not made sufficient allegations to survive Defendants' assertions of qualified immunity with respect to the events of September 3, 2008.

In addition, as to defendant Boehm, there is no evidence of his personal involvement in these alleged circumstances as is required under *Monell*, 436 U.S. at 691-92. I therefore suggest that all Defendants are entitled to summary judgment with respect to the allegations regarding September 3, 2008.

**ii. Allegations Regarding September 5, 2008**

Plaintiff alleges that on September 5, 2008, Deputy Boehm delivered a brown paper bag to inmate Broom that Plaintiff suspects contained controlled substances used to incapacitate him such that a sexual assault could be made upon him. (Doc. 1; Doc. 23, Ex. E at 3.) Defendant Boehm proffers the affidavit of Jail Lieutenant Romzek who states that "the Sanilac County's payroll records indicate that Deputy Boehm was not working on September 5, 2008." (Doc. 22, Ex. B,

¶ 7.) I suggest that, as to these events, Defendant has supported his motion with significant probative evidence and that Plaintiff has not met his obligation to present significant probative evidence to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore,* 8 F.3d at 339-40.

In addition, as to defendants Darling and Wedge, there is no evidence of their personal involvement in these alleged circumstances as is required under *Monell*, 436 U.S. at 691-92. I therefore suggest that all Defendants are entitled to summary judgment with respect to the allegations regarding September 5, 2008.

**iii. Allegations Regarding September 8 and 11, 2008**

As to the events of September 8, 2008, Plaintiff first states that, two days prior to the sixth, "Deputy Palmer was dispatched to cell #5 concerning an argument between several inmates" and therefore Defendants would have known that "there was a problem between the inmates." (Doc. 1 at 26.) Plaintiff then asserts that on September 8, 2008, he "woke up and found himself in pain in his genital and buttocks areas [so h]e knew that something had happened to him the previous night." (Doc. 1 at 24.) Plaintiff contends that at around 6:00 a.m. that morning, Deputy Boehm inquired how things were going and inmate Broom responded that they should let Plaintiff sleep for three hours. (Doc. 1 at 24.) At around 11:00 a.m., Plaintiff alleges that he overheard inmate Broom and others talking about how Broom had "drugged the Plaintiff with medication that he received from Deputy Boehm . . . [and] had the body of Plaintiff moved to another room where he performed a sexual act on the Plaintiff." (Doc. 1 at 24.) Plaintiff adds that inmate Broom bragged to others about sexually assaulting Plaintiff and that "this was done at the behest of the Deputies and that he could not get in trouble for it." (Doc. 1 at 24.) Plaintiff also alleges that he was

sexually assaulted by inmate Broom on September 11, 2008, and that inmate Broom bragged about the assault and told "Inmates Henery and Mosley [] that he could not continue to go through with it." (Doc. 1 at 25.)

I suggest that Plaintiff's allegation that, as of September 6, 2008, Defendants should have known there was a problem between the inmates because another deputy had been dispatched to the cell "concerning an argument between several inmates" (Doc. 1 at 26) is insufficient because it alleges mere negligence rather than the requisite knowing, i.e., deliberate indifference. *See Case,* 301 F.3d at 605-06. Thus, this statement does not meet the subjective prong of an Eighth Amendment claim.

As to the objective prong, Plaintiff does not allege that he remembers being sexually assaulted. Instead, Plaintiff relies on the pain he felt the next morning and on alleged statements by his cellmate bragging about having committed the assault. If actually made, these statements could have been made for the purpose of making Plaintiff think an assault occurred when none did. In order to find Plaintiff's allegations that the assault occurred plausible, one has to start with the first assumption that Defendant Boehm delivered the drugs to Broom that put Plaintiff into such a deep sleep that he would be unaware of anyone sexually assaulting him. As indicated above, that assumption has been refuted by the unrebutted affidavit of Nicholas Romzek who states that "the Sanilac County's payroll records indicate that Deputy Boehm was not working on September 5, 2008." (Doc. 22, Ex. B, ¶ 7.) I suggest that once this first domino is removed, the rest similarly fall absent any admissible supporting evidence to the contrary. Unfortunately for Plaintiff, the only evidence proffered are a few statements by his cellmates that are inadmissible hearsay.

In addition, as to Defendants Darling and Wedge, there is no evidence that they were aware of the alleged sexual assaults at all, let alone any time prior to the assaults occurring, nor is there any evidence of their personal involvement. I therefore recommend that summary judgment be granted in favor of all Defendants as to the events of September 8 and 11, 2008, since Plaintiff has again failed to meet his obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore,* 8 F.3d at 339-40.

**F. CONCLUSION**

For all the reasons stated above, I suggest that the motion for summary judgment be granted based on Plaintiff's failure to exhaust administrative remedies or alternatively based on the substantive analysis provided above.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." FED. R. CIV. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty,* 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).

The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier*, 454 F.3d at 596-97.

s/ Charles E Binder
CHARLES E. BINDER
United States Magistrate Judge

Dated: July 7, 2010

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on counsel of record via the Court's ECF System.

Date: July 7, 2010 By s/Patricia T. Morris
Law Clerk to Magistrate Judge Binder